**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JAMES RAHM,**

       **Plaintiff,**               **CIVIL ACTION NO. 04-CV-73422-DT**

vs.

                                 **DISTRICT JUDGE GERALD E. ROSEN**

**COMMISSIONER OF**
**SOCIAL SECURITY,**             **MAGISTRATE JUDGE MONA K. MAJZOUB**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The decision of the Commissioner is supported by substantial evidence on the record.

**PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff James Rahm filed his first application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on August 5, 1996. (Tr. 32). Defendant denied Plaintiff's application. *Id.* Plaintiff unsuccessfully appealed the initial decision to an ALJ, who issued an opinion denying Plaintiff's appeal on September 25, 1997. *Id.* On January 15, 1999, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 65).

Plaintiff filed a second application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on February 28, 2001. (Tr. 79-82). Plaintiff's application alleged he had been disabled since April 2, 1993. *Id.* Defendant initially denied these applications. (Tr. 41-44, 161-64). Plaintiff requested administrative review and received a hearing before Administrative Law Judge William J. Mussemen. (Tr. 267). On March 21, 2003 ALJ Mussemen issued a written opinion finding that Plaintiff became disabled on March 14, 2002. (Tr. 10-24). Plaintiff appealed the partial denial of his claims to this Court, and both parties have filed motions for summary judgment.

## MEDICAL HISTORY

Plaintiff was born on July 9, 1956. (Tr. 87). Plaintiff's primary medical problems are Crohn's disease, sleep apnea, emphysema, and obesity. Plaintiff has complained of heart burn, abdominal pain, and intermittent bloody stool since 1992. A December 1, 1993 endoscopy of Plaintiff revealed irritation and anatomical changes consistent with gastritis and doudenditis. (Tr. 112). Plaintiff continued to complain of lower abdominal pain, and he was examined on October 5, 1994 by Zouheir Fares, D.O. (Tr. 114). Dr. Fares concluded that Plaintiff was suffering from chronic appendicitis and an inguinal hernia, and recommended a laparoscopic appendectomy. (Tr. 114). Dr. Fares began a laparoscopic procedure on October 7, 1994, but converted to an open procedure when he discovered a diffusely inflamed area of the cecum. (Tr. 126). Dr. Fares removed Plaintiff's inflamed appendix and a possible tumor on Plaintiff's cecum. *Id.* Biopsies of the removed tissue did not suggest a malignant growth, but did suggest that Plaintiff might have Crohn's colitis. (Tr. 129, 131). A November 17, 1994 colonoscopy indicated that Plaintiff had moderately

severe Crohn's colitis from the midtransverse colon to the cecum with many pseudopolyps. (Tr. 120).

On May 9, 1997, Plaintiff's primary care physician, Mark Plucer, D.O., filled out a form titled "Memorandum of Physical Disorder(s) and Disability." (Tr. 210). On the form, Dr. Plucer wrote that Plaintiff suffered from Crohn's disease, mild to moderate emphysema, depression, carpal tunnel syndrome, low back pain, and inguinal hernia. (Tr. 210). Dr. Plucer opined that Plaintiff could lift up to 5 pounds at a time, but not repetitively, could walk up to two hours out of an eight hour day, could sit for six out of eight hours, but did not have good use of the upper extremities or the lower back. (Tr. 211). Dr. Plucer also opined that Plaintiff was disabled for life. (Tr. 210)/

On July 14, 1997 Plaintiff was examined by Alan L. Morgan, M.D. (Tr. 137). Plaintiff complained of chest pain, coughing, and persistent shortness of breath. *Id.* Dr. Morgan noted that Plaintiff, a smoker, had a history of emphysema, but concluded was suffering from musculoskeletal pain on the basis of an essentially normal chest x-ray. *Id.* On April 15, 1997, Henry Hagenstein, D.O. performed an EMG on Plaintiff's wrists. (Tr. 116). Dr. Hagenstein noted a mild sensory delay in the median nerves, and suggested that Plaintiff might have early or mild carpal tunnel syndrome. (Tr. 116).

Plaintiff continued to complain of lower abdominal pain with frequent diarrhea in 1997 and 1998. (Tr. 123). Plaintiff suffered an oblique fracture of the fibula near the ankle on July 17, 2000. (Tr. 144). Plaintiff was initially given an internal cast, but the fracture reopened, and Plaintiff had surgery to stabilize fracture on July 31, 2000. (Tr. 147). On May 7, 2001, Sidney L Schuchter, M.D. examined Plaintiff for the Michigan Disability Determination service. (Tr. 157). Dr.

Schuchter concluded that Plaintiff had intermittent abdominal pain and cramping, diarrhea, and occasional rectal bleeding. *Id.*

On May 16, 2001, Clark J. Headrick, D.O. performed a cardiopulmonary stress test on Plaintiff. (Tr. 194). Dr. Headrick concluded that Plaintiff suffered from a combination of significant obstructive lung disease, extraparenchymal restrictive disease, and a possible anxiety disorder. (Tr. 196). In a July 23, 2001 letter, Dr. Headrick opined that Plaintiff should undergo further testing to investigate the possibility that Plaintiff had an underlying intestitial lung disease in addition to normal emphysema. (Tr. 201). Dr. Headrick also noted that Plaintiff had sleep apnea, and would benefit from use of a continuous positive airway pressure device at night. *Id.* On July 30, 2001, Plaintiff had a CT scan performed on his chest, which showed signs of mild emphysema but no evidence of focal or segmental infiltrates or pleural or parenchymal masses. (Tr. 203).

In an August 9, 2001 letter, Dr. Headrick opined that Plaintiff was suffereing from emphysema, sleep apnea, obesity, and long standing Crohn's disease. (Tr. 204). On March 14, 2002, Dr. Plucer filled out a "Chrohn's & Colitis Residual Functional Capacity Questionnaire." (Tr. 216). Dr. Plucer identified Plaintiff as suffering from chronic bloody diarrhea, abdominal pain, cramping, and distension, fever, and fatigue. *Id.* Dr. Plucer opined that Plaintiff's pain was frequently severe enough to interfere with his ability to attend work, that Plaintiff could sit for no more than an hour at a time, and stand for no more than thirty minutes at a time, and that Plaintiff needed to take bathroom breaks roughly every forty-five minutes. (Tr. 220-221). Dr. Plucer also noted that Plaintiff's condition was worse than it had been in the preceding year. *Id.*

**TESTIMONY AT THE HEARING**

Plaintiff had a hearing before ALJ William J. Mussemen on December 3, 2002. (Tr. 267). Plaintiff testified about the symptoms of his medical condition. (Tr. 267-283). The ALJ also took testimony from Judith Findora, a vocational expert. (Tr. 283). The ALJ asked the vocational expert to testify about the availability of jobs for a hypothetical person of Plaintiff's age, educational level, and vocatoinal background, assuming certain functional restrictions. First, the ALJ asked the vocational expert to testify about the availability of jobs who could perform sedentary work with no temperature extremes in a damp environment with minimal dust and no smoke, chemicals, or fumes, involving no foot or leg controls and no repetitive bending, squatting, kneeling, crawling, or climbing. (Tr. 285). The vocational expert testified that there would be jobs available in the economy for such a person. *Id.*

The ALJ asked the vocational expert to testify about there would be jobs available for a person of Plantiff's age, educational and vocational background subject to the limitations described above but who would also be unable to attend work four or more days a month due to symptoms of Crohn's disease. (Tr. 285-86). The vocational expert testified that there would be no work available for such a person. Finally, the ALJ asked the vocational expert to testify about there would be jobs available for a person of Plantiff's age, educational and vocational background subject to the limitations described above but who would be required to lie down at unpredictable intervals during the day for 20 to 60 minutes at a time during the day. (Tr. 286). The vocational expert testified that there would be no work available for a hypothetical person with this limitation either. *Id.*

### THE ALJ'S OPINION

The ALJ's issued a written opinion on March 21, 2003. (Tr. 14). The ALJ concluded that from September 25, 1997 to March 14, 2002, Plaintiff retained the functional capacity to do

sedentary work up to eight hours a day, five days a week, provided that the work involved no exposure to temperature extremes or damp work environments, no use of foot or leg controls, no repetitive bending, squatting, kneeling, crawling, or climbing, and no more than minimal exposure to dust, smoke, fumes, or chemicals. (Tr. 23). The ALJ concluded that from March 14, 2002 onwards, Plaintiff had the same functional capacity, except that he would be required to be absent from work four days a week because of the symptoms of Crohn's disease. *Id.* Relying on the testimony of the vocational expert, the ALJ concluded that Plaintiff had retained the functional capacity to do work until March, 14, 2002. (Tr. 24).

## **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also

supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id*. (citations omitted).

Plaintiff argues that the ALJ erred in concluding that Plaintiff was not disabled before March 14, 2002. Plaintiff's brief cites a variety of medical records indicating that Plaintiff has suffered

symptoms of Crohn's syndrome, some of them severe, since 1993. The ALJ concluded that these symptoms were intermittent and did not interfere with Plaintiff's ability to attend work until March 14, 2002, at which point Plaintiff's Crohn's disease was sufficiently severe and persistent that it prevented him from attending work for several days each week.

Substantial evidence on the record supports the conclusion that Plaintiff's Crohn's symptoms were intermittent before March 14, 2002, and were not so severe that he would be required to miss work several days a week. Treatment notes from 1997, 1998, 1999, 2000, and 2001 indicate that Plaintiff complained intermittently about abdominal pain, diarrhea, and bloody stool. (Tr. 180-83, 187-88). Plaintiff appears to have had no more than mild Crohn's symptoms on March 17, 1998, April 6, 1998, Apri 9, 1998, September 28, 1998, December 1, 1998 July 2, 1999, and April 3, 2000. (Tr. 180-183). Plaintiff himself described his Crohn's symptoms as intermittent when he was being examined by Schuchter on May 7, 2001. (Tr. 157). Crohn's appears to be a progressive disease. In contrast to earlier medical records, the form created by Dr. Plucer on March 14, 2002 indicates that, as of that date, Plaintiff exhibited constant severe symptoms of Crohn's disease, and these symptoms were not expected to improve at any point in the future. Substantial evidence on the record also supports the ALJ's conclusion that Plaintiff's symptoms became sufficiently severe as to interfere with Plaintiff's ability to attend work beginning on March 14, 2002.

Plaintiff also argues that the ALJ failed to fully incorporate the functional limitations imposed by Plaintiff's depression and emphysema. Plaintiff was diagnosed with adjustment disorder and depressed mood in July 1997. (Tr. 119). Plaintiff did not undergo counseling or treatment in the ensuing five years. (Tr. 229). Dr. Headrick noted that Plaintiff's abnormal performance during a stress test could have been due to an anxiety disorder. (Tr. 196). The record is otherwise silent

on the question of Plaintiff's mental and emotional health after this date. Given the lack of any treatment or an ongoing diagnosis, the ALJ was not unreasonable in concluding that Plaintiff was not suffering from a mental or emotional impairment. Substantial evidence on the record therefore supports the conclusion that Plaintiff's mental and emotional impairments were not severe.

The ALJ adequately incorporated the limitations imposed by Plaintiff's emphysema into his RFC assessment. The ALJ concluded Plaintiff's pulmonary condition was severe, and that Plaintiff could perform only sedentary work, and could not tolerate temperature extremes, damp work environments, and more than minimal exposure to dust, smoke, fumes, or chemicals. (Tr. 20). Neither the record nor Plaintiff suggest that the ALJ should have incorporated any other limitations into Plaintiff's RFC assessment on account of Plaintiff's pulmonary condition.

## **RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secy*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: 05/18/05                             s/ Mona K. Majzoub
                                            MONA K. MAJZOUB
                                            UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: 05/18/05                             s/ Lisa C. Bartlett
                                            Courtroom Deputy